**ALEXANDER MOUSSAZADEH   SBN239564**
**MLG LAW GROUP**
800 S. Robertson Blvd., Suite #2
Los Angeles, California 90035
Office: (310)598-6212
Facsimile: (310)967-0700
Email: Alex@mlglawgroup.com

Attorney for Plaintiff Thomas S. Lin and Lily W. Lin



**FILED**
Superior Court Of California
County Of Los Angeles

DEC 1 9 2017

herri R. Carter  Executive Offi r (Clerk

By_____ Deputy,
  Glorietta Krauss J,

# IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF LOS ANGELES

### STANLEY MOSK COURTHOUSE

BC 6 8 7 5 3 1

| | |
|---|---|
| THOMAS S. LIN AND LILY W. LIN<br><br>Plaintiff,<br><br>v.<br><br>SHELLPOINT MORTGAGE SERVICING.;<br>AND DOES 1-10, INCLUSIVE<br><br>Defendants. | CASE No.<br><br>COMPLAINT FOR:<br><br>1. VIOLATION OF 15 U.S.C. §1692f(6)<br>2. VIOLATION OF CALIFORNIA HOMEOWNER'S BILL OF RIGHTS ("HBOR") CIVIL CODES §§2924(a)(6), 2924.17<br>3. NEGLIGENT REPRESENTATION<br>4. VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE §17200, ET SEQ. |

COMES NOW, Plaintiffs THOMAS S. LIN and LILY W. LIN, ("Plaintiffs" or "LIN"),

"consumers" as defined by the Fair Debt Collection Practices Act, hereinafter referred to as

FDCPA, *15 U.S.C. § 1692a(3)*, against Defendant SHELLPOINT MORTGAGE SERVICING,

1

COMPLAINT

hereinafter referred to as SHELLPOINT, in the capacity as the alleged mortgage servicer of the alleged debt and "debt collector" as defined by the FDCPA, *15 U.S.C. §§1692f(6), 1692a(6)*, complains, pleads and alleges as follows:

## I.   STATEMENT OF JURISDICTION

This Court has proper subject matter Jurisdiction over the within action as the real property, the subject of instant action, is so situated and physically located within this California Superior Court's Judicial District.

## II.   SUBJECT REAL PROPERTY AT ISSUE

The Real Property (herein after referred to as "Property"), the subject of any and all claims of any of the Parties hereto, and which is the subject of instant action, and that of which Plaintiff prays for a Decree and/or Order thereto.  The "Subject Property" address and legal description is as follows: 6115 Armaga Spring Road, Rancho Palos Verdes, CA 90275.  More particularly, the legal description of this property is:

LOT 52, OF TRACT NO. 27681, IN THE CITY OF RANCHO PALOS VERDES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 700 PAGE(S) 1 TO 4 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Assessor's Parcel Number:  7585-007-010.

## III.   IDENTITY OF PARTIES

Plaintiffs are informed and believes, and thereon alleges, that at all times relevant hereto Defendant, SHELLPOINT MORTGAGE SERVICING ("SHELLPOINT"), is an unregistered mortgage institution unlicensed to do business in the State of California, in and of the County and City where subject "PROPERTY" is so situated and physically located which is within this

2

COMPLAINT

Courts Judicial District.  SHELLPOINT is in the primary business of servicing residential mortgage loans, collecting debt on behalf of other entities and enforcing security interests.

Plaintiffs are unaware of the true names and capacities of any individuals and/or entities sued herein under the fictitious names DOES 1 to 10, inclusive or, to the extent that the names of such individuals or entities may become known to Plaintiffs, and as such Plaintiffs cannot state with any certainty that such a Cause of Action lies herein as against such individuals or entities, or Plaintiffs are unable to alleged the elements of such Cause of Action, at this time, and as such said Defendants are herein named in accordance with the provisions of (*Cal Code of Civil Procedure Sec. 474*).  Plaintiffs thereon reserves the right to amend instant Complaint to allege the true names and capacities of such fictitiously named Defendants when the same become known or when it has been ascertained with reasonable certainty that such Cause of Action hereunder can be satisfactorily stated and maintained as against each such fictitiously named individual or entity.

Plaintiffs are informed and believes and thereon alleges, that in committing certain acts alleged, some or all of the Defendants named were acting as the Agents, Joint Ventures, Partners, Representatives, Subsidiaries, Affiliates, Associates, Successors, Assigns and/or Employees and/or Agents or some or all of the other Defendants, and that some or all of the conduct of such Defendants, as complained of herein, was within the course and scope and agency of such relationship.

Wherever reference is made in this Complaint to any act of any Defendants, that allegation shall mean that each Defendants acted individually and jointly with the other Defendants.

Any allegation about acts of any corporate or other business Defendants means that the corporation or other business did the acts alleged through its officers, directors, employees,

3

COMPLAINT

agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

At all relevant times, each Defendant committed the acts, caused or directed to others to commit the acts, or permitted others to commit the acts alleged in this Complaint. Additionally, some or all of the Defendants acted as the agent of the other Defendants, and all of the Defendants acted within the scope of their agency if acting as an agent of the other.

At all relevant times, Defendant knew or realized that the other Defendants (successors and/or assigns) were engaging in or planned to engage in the violations of law alleged in this Complaint. Knowing or realizing that the other Defendants were engaging in or planning to engage in unlawful conduct, each Defendants nevertheless facilitated the commission of those unlawful acts, and thereby aided and abetted the other Defendants in the unlawful conduct.

At all times mentioned in this Complaint, Plaintiffs, MICHAEL S. DOW and KRISTINA DOW, are individual consumers residing in the County of Los Angeles and are the owners of the certain Subject Property.

This is a federal judicial issue and the Consumer is authorized by the Constitution for the United States of America, codified in the FDCPA, to enforce the laws of the United States and to protect and defend those inalienable secured rights within the Constitution for the United States of America. This is an action to enforce the liability of the Debt Collectors/Defendants for violations of this Consumer's protections under the FDCPA, the Constitution for the United States of America, and other consumer protection laws which were enacted by Congress to protect Consumers from illegal, harassing, deceptive and abusive debt collection activities.

The rules of law governing this Complaint is the FDCPA, *15 U.S.C. §1692f(6)* the Consumer Financial Protection Bureau (CFPB), the Federal Trade Commission (FTC) and

4

COMPLAINT

Article III, Section 2 of the United States Constitution. The language to be used in this matter is the Plaint Writing Act of 2010 – which has been enacted by Congress through Executive Order 13563. It requires federal agencies to use clear communications that the public can easily understand and written in plain language.

Any motions or pleadings, that contain legalese and are not written in plain English for the Consumer to understand, will be intentionally confusing, abusive, profane, obscene and harassing to the Consumer, would be a violation of *15 U.S.C. §1692d(2)*, and will be assessed at an additional $5,000.00 per occurrence and added to this Consumer's verified claim.

Any response, communications or counterclaim to this Consumer's Complaint verified claim, from any Debt Collector/Defendant in the form of pleadings or otherwise, should be verified, under oath and penalty of perjury, as required by law. There will be no exceptions. Any false statements made in any communications by the Defendants in this enforcement action, would be considered perjury. Each occurrence of perjury will be assessed at $25,000.00 and will be added to the Consumers' damages.

Any debt collector or attorney attempting to come into this consumer matter, MUST have prior consent from the Consumer or a court of competent jurisdiction to enter their appearance and MUST have the proper license; and MUST be properly bonded and insured in an amount to cover all of the Consumers' damages in this action.

## IV. **DATE OF DETERMINATION**

Plaintiffs herein request that the date of the Judicial determination sought be that of the date of the filing of the Complaint.

## V. **STATEMENT OF THE CASE**

This action arrives out of the illegal conduct and behavior of debt collector, Defendant,

5

COMPLAINT

SHELLPOINT, engaging in illegal collection activities as defined in *15 U.S.C. §1692f(6)*. Defendant, due to the failure of the alleged debt being paid, are attempting to enforce the power of sale contained in Plaintiffs' Deed of Trust by proceeding to take a non-judicial foreclosure action to dispossess and disable Plaintiffs from their personal, private property that was obtained for personal, family and household use – not for commercial business or trade. Plaintiffs allege Defendant SHELLPOINT has no lawful or legal right to do so.

Plaintiffs, "consumers", disputes the unverified alleged debt with Defendant and have requested verification and validation of the alleged debt. Thus, Plaintiffs contend Defendant SHELLPOINT does not have a lawful right to contact them, attempt to collect on the alleged debt, and proceed with enforcement of a security interest by attempting to conduct a non-judicial foreclosure action on their Property.

## VI.   FACTUAL ALLEGATIONS

On June 17, 2005, Plaintiffs, executed a Deed of Trust in favor of America's Wholesale Lender, hereinafter referred to as AWL, an unregistered and unlicensed entity in the State of California. For the purposes of this Complaint, AWL is a "creditor" as defined by the FDCPA, *15 U.S.C. §1692a(4)*. The transaction as defined by the FDCPA, *15 U.S.C. §1692a(5)* is a "debt" and hereinafter referred to as a "debt" or "debt obligation". Attached as **Exhibit "A"** and incorporated herein by reference is a true and correct copy of the Deed of Trust, hereinafter referred to as DOT. The DOT references a loan number that is different from what Defendant SHELLPOINT references.

Sometime after the closing of the loan, Plaintiffs allege that the debt was assigned, transferred, and/or sold to a securitized trust that is undisclosed to Plaintiffs. That entity or entities is not named in this lawsuit.

In 2010, Plaintiffs experienced financial hardships that caused them to fall behind in their payments. Their financial hardships grew deeper and they were unable to get caught up with their payments. As a consequence of non-payment, foreclosure proceedings were initiated against their Property. Since 2011 the servicing of Plaintiffs' alleged debt has been transferred twice. Each time Plaintiffs' alleged debt has been transferred, it was at a time when Plaintiff was in default and due for the November 1, 2010 payment.

Prior to the transfer of their alleged debt in December of 2016, Plaintiffs made several attempts to modify the debt with their previous loan servicer. All attempts were unsuccessful. On or about December 9, 2016, Plaintiffs received notification that the servicing of their alleged debt was transferred to Defendant SHELLPOINT. Effective December 1, 2016, Defendant SHELLPOINT purportedly acquired the servicing of Plaintiffs' alleged debt. At the time of the acquisition, the alleged debt was contractually due for the November 1, 2010 payment. Attached as **Exhibit "B"** and incorporated herein by reference is a true and correct copy of the Servicing Notice sent to Plaintiffs by Defendant SHELLPOINT. Pursuant to the FDCPA, *15 U.S.C. §1692(a)(6)*, Defendant SHELLPOINT is a debt collector and not a creditor with authorization or a right to enforce the security interest.

On or about December 19, 2016, Plaintiffs were notified by Defendant SHELLPOINT that the "creditor" of their debt was owed to Bank of America, N.A. Plaintiffs were notified of this information is a Validation of Debt Notice. Attached as **Exhibit "C"** and incorporated herein by reference is a true and correct copy of the Validation of Debt Notice. Plaintiffs disputes this information based on the recorded chain of title in the Los Angeles County Recorder's Office.

On or about March 31, 2017, Plaintiffs received a letter from Defendant informing them that SHELLPOINT is servicing their loan on behalf of The Bank of New York Mellon FKA The

7

COMPLAINT

Bank of New York, As Trustee For The Certificateholders of CWALT, Inc., Alternative Loan Trust 2005-38, Mortgage Pass-Through Certificates, Series 2005-38, hereinafter referred to as BONY as Trustee of the 2005-38 Trust, who is the owner of their loan.  Plaintiff alleges that BONY as Trustee of the 2005-38 is not the owner of their loan but is a debt collector and not a creditor pursuant to the FDCPA, *15 U.S.C. §1692f(6)(F)(iii)*.  Attached as **Exhibit "D"** and incorporated herein by reference is a true and correct copy of the March 28, 2017 letter.

Plaintiffs have learned, through Defendant's recent attempt to enforce the alleged debt obligation, that Defendant has no legal right or authority to proceed with a non-judicial foreclosure action against their property.

After researching the chain of title to their Property in the Los Angeles County Recorder's Office, Plaintiffs became aware of transactions that were never disclosed to them.  Plaintiffs soon learned that Defendant named in this lawsuit has no legal or corporate authority to collect on the debt, service the debt, or proceed with a non-judicial foreclosure to enforce the security interest.

**A.   Recorded Chain of Title**

After the recording of the DOT on June 27, 2005, Plaintiffs learned that on June 29, 2011, an Assignment of Deed of Trust, hereinafter referred to as ADOT, was executed and subsequently recorded on Plaintiffs' Property on December 18, 2014.  "For Value Received" the alleged debt was purportedly assigned and transferred and conveyed to BONY as Trustee of the 2005-38 Trust.  Plaintiffs allege that when this ADOT was executed, the debt was in default and contractually due for the November 1, 2010 payment.  As defined by the FDCPA, *15 U.S.C. §1692a(6)(F)(iii)*, BONY as Trustee of the 2005-38 Trust is a debt collector and not a creditor.  Plaintiffs allege that any change of ownership that occurred after the debt fell into default would be a debt collector and not a creditor.  Attached as **Exhibit "E"** and incorporated herein by

8

reference is a true and correct copy of the ADOT.  Plaintiffs adamantly disputes the contents of this instrument.

Plaintiffs allege that Defendant SHELLPOINT is a debt collector and has no legal right or authority to enforce a security interest or attempt to collect any payments from Plaintiffs.

*15 U.S.C. §1692j(a)* states the following:

> It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.

## VII.   PLAINTIFFS HAVE A PRIVATE RIGHT TO ACTION

As "consumers" with protections under the FDCPA and the Consumer Financial Protections Bureau, hereinafter referred to as CFPB, Congress has afforded the Plaintiffs a "private right of action" for damages caused by the illegal, deceptive and abusive collection activities of a "debt collector".  **A "consumer" has the private right to exercise every provision in the consumer protection laws or any other constitutional protections that have been afforded to him as a "consumer".**

The CFPB affirms that Congress intended the FDCPA to be primarily self-enforcing, and the "consumer" does not have to ask permission to enforce it.  The CFPB's Supplemental Amicus Brief for *Bock v. Pressler, LLP*, No. 15-1056 stated the following:

> "The Bureau has a substantial interest in plaintiffs' standing under Article III to bring in federal court to assert their rights under the Fair Debt Collection Practices Act (FDCPA or Act).  Although the Bureau and various other federal Agencies have authority to enforce the Act, *15 U.S.C. § 1692l*, **Congress intended the Act to be "primarily self-enforcing," in that "consumers who have been subjected to collection abuses will be enforcing compliance," S. Rep. No. 95-382, at 5 (1977).  An unduly narrow understanding of Article III standing would limit consumers' ability to exercise the Act's private right of**

9

COMPLAINT

**action and thereby weaken an important supplement to the Bureau's own enforcement efforts**. *Emphasis added.*

If Defendant SHELLPOINT feel they have a lawful, bona fide, or verified claim to Plaintiffs' personal, private Property, then they MUST file a verified counterclaim pursuant to *15 U.S.C. §1692i.*

### FIRST CAUSE OF ACTION – VIOLATION OF 15 U.S.C. §1692f(6)
[Against Defendant and Doe Defendants]

1. Plaintiffs hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

2. Under the FDCPA, the **entire** FDCPA can apply to a party to whose principal business is enforcing security interests but who nevertheless fits *§1692a(6)'s* general definition of a debt collector.

3. Defendant is violating *15 U.S.C. §1692f(6)* by perpetrating as "creditors" and threatening to proceed with a non-judicial foreclosure action on Plaintiffs' Property when they have no present right to possession of the Property claimed as collateral through an enforceable security interest and there is no present intention to take possession of the property.

4. *15 U.S.C. §1692f(6)* regulates more than just the collection of a money debt, it prohibits a non-judicial action to dispossess Plaintiffs from their home without a legal ability to do so. Plaintiffs allege Defendant is a debt collector attempting to enforce a security interest by using unfair or unconscionable means to collect or attempt to collect a debt.

5. In California only a "creditor" may enforce a foreclosure. Defendant is a debt collector as pursuant to the FDCPA, *15 U.S.C. §§1692f(6), 1692a(6)* and is threatening to take action by attempting to enforce a security interest by conducting a non-judicial act and attempting to schedule foreclosure dates on Plaintiffs' Property in violation of *15 U.S.C.*

COMPLAINT

*§1692f(6)*.

6. Plaintiffs allege the alleged debt was not legally transferred, conveyed, or assigned to any entity before the alleged debt fell into default. Any interest or claim claimed by Defendant's alleged agent, Bony as Trustee of the 2005-38 Trust, was acquired when the alleged debt was in default and contractually due for the November 1, 2010 payment. Pursuant to the FDCPA, they are a debt collector without authority to enforce a security interest.

7. The definition of "debt collector" under *15 U.S.C. §1692a(6)* includes Defendant SHELLPOINT. Defendant does not fall into the exception of *15 U.S.C. §1692a(6)(F)(iii)* which specifically states for the purpose of *§1692f(6)*: "…such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does NOT include any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent of such action concerns a debt which was **not** in default at the time it was obtained by such person. In the case at bar, Defendant acquired the servicing to the alleged debt effective December 1, 2016 when the debt was contractually due for or about the November 1, 2010 payment.

8. Plaintiffs allege that Defendant is falsely representing the status of the alleged debt obligation and are misleading Plaintiffs to believe they have the ability to enforce the alleged debt obligation, in which they have no pecuniary equitable, or legal interest. Plaintiff alleges Defendants are violating the FDCPA by attempting to collect and enforce on a debt that is barred by operation of law. Pursuant to California *Commercial Code §3118*, the alleged debt is barred.

9. Plaintiffs allege Defendant has gathered whatever data they have in their possession from a third party and not from the original creditor.

COMPLAINT

10.   At no time have Plaintiffs given to Defendant their prior consent, as a debt collector, to contact them nor did Defendant receive express permission from a court of competent jurisdiction in violation of *15 U.S.C. §1692c(a)*.   The law of the FDCPA is very clear.   A debt collector must obtain permission to contact a "consumer" regarding an alleged debt.   If they do not get permission, then they must obtain permission from a court of competent jurisdiction. Defendant never obtained prior permission from Plaintiffs nor a court of competent jurisdiction. Plaintiffs gave permission to creditors not debt collectors when they executed the DOT.

11.   Plaintiffs allege Defendant is attempting to proceed with an illegal debt collection action dubbed a foreclosure when they have no legal authority to do so violating *15 U.S.C. §1692e(5), 15 U.S.C. §1692f(6)(A), (B), and (C)*, and *15 U.S.C. §1692i*.

12.   Every written communication taken by Defendant is an attempt to collect a debt and are violations of the FDCPA pursuant to *15 U.S.C. §1692e(5), 15 U.S.C. §1692e(6)(B), 15 U.S.C. §1692i, 15 U.S.C. §1692j(a) and (b)*.

13.   Defendant took Plaintiffs' personal, private information and made it public, and distributed it to third parties without the Plaintiffs' authorization in violation of *15 U.S.C. §1692c(b)*.   Defendant has refused to provide adequate and sufficient verification and validation of any alleged debt as requested by Plaintiffs.   Defendant has stolen Plaintiffs' personal, private information and put it into a non-judicial act without Plaintiffs' authorization or consent.

14.   Any foreclosure documents that Plaintiff endorses or creates that has or will be publicly recorded are in violation of *15 U.S.C. §1692j(a)(b)* and was compiled and designed in order to collect payment and enforce the security interest from an illegal sale of the Plaintiffs' personal private Property.

15.   Plaintiffs allege Defendant's behavior and conduct have injured and harmed Plaintiffs

12

COMPLAINT

with their willful and continuous illegal, deceptive and criminal violations of federal and state law in their attempt to collect an unverified alleged debt initiating and attempting to conduct a non-judicial foreclosure in violation of *15 U.S.C. §1692f(6)*.

16. Defendant is violating the FDCPA by attempting to collect an alleged debt on behalf of another, and they are using instrumentalities of interstate commerce, and the mail (U.S.P.S.) to communicate with the Plaintiffs.

17. Plaintiffs could not have reasonably known of the existence of a claim for violation of *15 U.S.C. §1692e* because Defendant fraudulently concealed the fact that they are not entitled to enforce the alleged debt.

18. As a result of Defendant's violations of the FDCPA, Plaintiffs are entitled to actual damages pursuant to *15 U.S.C. §1692k(a)(1)*; statutory damages in an amount up to $1,000.00 pursuant to *15 U.S.C. §1692k(a)(2)(A)*; reasonable attorneys' fees, and costs pursuant to *15 U.S.C. §1692(a)(3)*; and declaratory relief, from Defendant herein.

19. In addition to their liability for actual damages caused to Plaintiffs, Defendant is also liable for statutory damages pursuant to *15 U.S.C. §1692k*, in an amount to be determined at trial.

20. Defendant's conduct as herein alleged continues to be oppressive, fraudulent, and malicious, and therefore Plaintiffs are entitled to punitive and exemplary damages in an amount to be proven at trial.

**SECOND CAUSE OF ACTION – VIOLATION OF CALIFORNIA HOMEOWNER'S BILL OF RIGHTS ("HBOR"), CIVIL CODES §§2924(a)(6), 2924.17**
[Against Defendant and Doe Defendants]

21. Plaintiffs hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

22. The California HBOR consists of a series of related bills including two identical bills

13

COMPLAINT

that were passed on July 2, 2012 by the state Senate and Assembly. Both of these bills ultimately give rights back to borrowers and create a system in which banks must be held accountable for pursuing their own interests above the borrowers.

23. Defendant is in violation of California HBOR (AB 278/SB 900). The law prohibits recording "robodocs" on ALL mortgage-related notices of default and support declarations, notices of sale, assignments of deed of trust, and substitutions of trustee recorded in connection with a non-judicial foreclosure, as well as declarations filed in court with respect to any foreclosure proceeding. Documents must be accurate, complete and supported by competent and relevant evidence. Defendant has violated the notice by not complying with *Civil Code § 2924.17*. Defendant has failed to provide competent and relevant support to their authorization to proceed with a non-judicial action against Plaintiffs' Property.

24. Assignments of Deed of Trust must be authenticated by a person who has personal knowledge of the assignment (and the circumstances in which the assignment occurred). Otherwise, the assignment is hearsay and must be excluded from evidence unless otherwise admitted for different reasons. Hearsay statements in assignments cannot be admitted into evidence and for purposes of this case, then, such statements do not exist. The fact that an assignment or other document exists as an original or a copy does not mean that what is written on it can be admitted into evidence.

25. A document signed by an agent or "nominee" like MERS, as in the case herein, after the demise of the principal is void. If the originator no longer exists, MERS is not authorized to act on behalf of the originator. AWL was never an entity licensed and authorized in with the California Secretary of State.

26. The law under California HBOR forbids an entity from initiating and/or proceeding

14

COMPLAINT

with a non-judicial foreclosure unless it is the holder of the beneficial interest under the deed of trust, the original or properly substituted trustee under the deed of trust, or designated agent of the holder under the deed of trust, *California Civil Code § 2924(a)(6)*. Plaintiffs contend that Defendant, and the entity it represents, are not creditors with the power to enforce the power of sale contained in a DOT, but are debt collectors pursuant to the FDCPA.

27. Defendant has failed to provide an adequate chain of title before the debt fell into default that would demonstrate their authority to proceed with a foreclosure on behalf of the true creditor despite Plaintiffs' request to provide such documentation and their failure to provide competent and relevant evidence to support the accuracy of their recorded documents.

28. The law further affords a right to cure violations up to a foreclosure sale but Defendant has failed to correct any "Material Violations". Pursuant to the law, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent can avoid liability for any violation that it has corrected and remedied directly or through a third-party contractor prior to recordation of a trustee's deed upon sale.

29. The law affords a private right of action for Borrowers to seek a court injunction for a material violation of provisions up until a foreclosure sale is completed, and may seek attorney's fees. The law under California HBOR forbids an entity from initiating and/or proceeding with a non-judicial foreclosure unless it is the holder of the beneficial interest under the deed of trust, the original or properly substituted trustee under the deed of trust, or designated agent of the holder under the deed of trust, *California Civil Code § 2924(a)(6)*.

### THIRD CAUSE OF ACTION – NEGLIGENT REPRESENTATION
[Against Defendant and Doe Defendants]

30. Plaintiffs hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

15

COMPLAINT

31.  Defendant's conduct, as alleged above and beneath, constitutes an intentional misrepresentation.  California *Civil Code §1710(2)*, sets forth the cause of action for a negligent misrepresentation.  The elements for a cause of action for a negligent misrepresentation are (1) defendant makes a representation as to a past or existing material fact, (2) defendant made the misrepresentation without any reasonable grounds for believing it to be true, (3) the representation was made with the intent to induce the plaintiff to rely upon it, (4) plaintiffs were unaware of the falsity of the representation and acted in justifiable reliance on the representation, and (5) damages.

32.  Plaintiffs allege Defendant purposely provided Plaintiffs with false information in order to induce them to pay payments to them in which they have no authority or right to collect and to proceed with a non-judicial action against Plaintiffs' Property.

33.  Furthermore, Plaintiffs allege that Defendant is falsely misrepresenting the true creditor to the alleged debt.  Plaintiffs are of the falsity of the representation and only discovered its falsity after Defendant instituted foreclosure proceedings against Plaintiffs' Property and inquired about the ownership of the alleged debt.

34.  Plaintiffs further seeks restitution, disgorgement of sums wrongfully obtained, costs of suit, reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

## FOURTH CAUSE OF ACTION – VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, ET SEQ.
[Against Defendant and Doe Defendants]

35.  Plaintiffs hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

36.  California *Business & Professions Code § 17200, et. seq.*, prohibits acts of unfair

16

COMPLAINT

competition, which means and includes any "fraudulent business act or practice..." and conduct which is "likely to deceive" and is "fraudulent" within the meaning of *Section 17200*.

37.  As more fully described above and below, Defendant, as a debt collector are doing certain acts and practices, such as attempting to collect on a debt to which they have no right or authority, which are likely to deceive, constituting a fraudulent business act or practice.

38.  Specifically, Defendant engaged in deceptive business practices with respect to mortgage loan servicing, assignments of notes and deeds of trust, the process of initiating related matters by:

    a) Assessing improper or excessive fees;
    b) Improperly characterizing customers' accounts as being in default or delinquent status to generate unwarranted fees:
    c) Instituting improper or premature foreclosure proceedings to generate unwarranted fees;
    d) Failing to provide adequate statement information to customers regarding the status of their accounts, payments owed, and/or basis for fees assessed;
    e) Seeking to collect and collecting various improper fees, costs and charges that are either not legally due under the mortgage contract or California law, or that are in excess of amounts legally due;
    f) Mishandling borrowers' documents resulting in fraudulent defaults and foreclosures;
    g) Treating borrower as in default on their loans even though the borrowers are under no obligation to make payments to Defendants, or have otherwise complied with mortgage requirements or California law.
    h) Failing to disclose the fees, costs and charges allowable under the contract;
    i) Ignoring Borrowers' Qualified Written Request and Borrowers' demand to produce the original Promissory Note or comply with Borrowers' request for an accounting of all proceeds/payments involved with Borrowers' loan;
    j) Executing, manufacturing, creating and recording false, fraudulent, forged and misleading deeds, assignments, notice of sale/default documents; and
    k) Failing to disclose the principal for which documents were being executed and recorded in violation of *Cal. Civ. Code section 1095*;
    l) Acting as beneficiaries and trustees without the legal authority to do so.

39.  Defendant failed to act in good faith as they took and charged fees for services but did no render them competently and in compliance with applicable law.

17

COMPLAINT

40.  Moreover, Defendant engaged in a uniform pattern and practice of unfair and over-aggressive servicing that resulted in the assessment of unwarranted and unfair fees against California consumers, and premature default resulting in unfair and illegal foreclosure proceedings.  The scheme implemented by Defendant were designed to defraud not just Plaintiffs, but all California consumers and enrich the Defendant.

41.  The foregoing acts and practices have caused substantial harm to not only Plaintiffs but to all its California consumers and to all California taxpayers.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs pray for judgment against Defendant, as follows:

1.  For compensatory, special, and general damages in an amount according to proof at trial, but not less than $1,000,000.00 against all Defendant;

2.  For punitive and exemplary damages in an amount to be determined by the Court against Defendant;

3.  For an order compelling Defendant to remove any instrument which does or could be construed as constituting a cloud upon Plaintiffs' title to the Property;

4.  For a declaratory judgment finding that Defendant does not have any legally cognizable rights as to Plaintiffs, the Property, Plaintiffs' alleged debt, tendered to and executed by Plaintiffs;

5.  For the Court to issue an order restraining Defendant, their agents, or employees from continuing or initiating any action against the Property and enjoining Defendant, their agents, or employees from doing so during the pendency of this matter;

6.  For reasonable cost of suit incurred in this action; and

7.  For reasonable attorney's fees; and

COMPLAINT

8. For such additional and further relief as the Court may deem proper and reasonable.

DATED:  December 18, 2017

Respectfully submitted by:

**MLG LAW GROUP**

Alexander Moussazadeh
Attorney for Thomas S. Lin and Lily W. Lin

## VERIFICATION

We, Thomas S. Lin and Lily W. Lin, individuals, are the Plaintiffs in the above-entitled action.  We have read the foregoing complaint and know the contents thereof.  The same is true of our own knowledge, except as to those matters which are therein stated on information and belief, and as to those matters, we believe it to be true.

We declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed Los Angeles, California on December 18, 2017

Thomas S. Lin
Plaintiff

Lily W. Lin
Plaintiff

19

COMPLAINT

12/19/2017

**EXHIBIT A**



**This page is part of your document - DO NOT DISCARD**



## 05 1504263

**RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
06/27/05 AT 08:00am**

# TITLE(S) :

_____

▲                                                    ▲



L E A D     S H E E T

**FEE**

FEE $73— M
DAF $ 2
C-20

23

**D.T.T.**

NOTIFICATION SENT $4 ◎

**CODE
20**

**CODE
19**

**CODE
9** _____

12/19/2017

**Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.**

**Number of AIN's Shown**

**THIS FORM IS NOT TO BE DUPLICATED**

Recording Requested By:
M. CALDERON

## 05  1504263

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
TONY DEL ANGEL

*39109053 AF*

[Space Above This Line For Recording Data]

12125662                              00010278469906005
[Escrow/Closing #]                    [Doc ID #]

# DEED OF TRUST

MIN 1000157-0005306288-7

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated   JUNE 15, 2005        , together with all Riders to this document.

**(B) "Borrower"** is
THOMAS S LIN, AND LILY W LIN, HUSBAND AND WIFE AS JOINT TENANTS

**CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Page 1 of 16                                                    Initials

-6A(CA) (0207)   CHL (09/02)(d)   VMP MORTGAGE FORMS - (800)521-7291         Form 3005  1/01
CONV/VA





DOC ID #: 00010278469906005

Borrower's address is

6115 ARMAGA SPRING ROAD, RANCHO PALOS VERDES, CA 90275
Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is
AMERICA'S WHOLESALE LENDER
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
P.O. Box 10219, Van Nuys, CA 91410-0219
**(D) "Trustee"** is
CTC REAL ESTATE SERVICES
155 NORTH LAKE AVE., PASADENA, CA 91109 , ,
**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F) "Note"** means the promissory note signed by Borrower and dated   JUNE 15, 2005             . The Note states that Borrower owes Lender
EIGHT HUNDRED SEVENTY FIVE THOUSAND and 00/100


Dollars (U.S. $ 875,000.00       ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   JULY 01, 2035            .
**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |


**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M) "Escrow Items"** means those items that are described in Section 3.
**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

Initials: _____

05 1504263

4

DOC ID #: 00010278469906005

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(O) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(P) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this *Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a* "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY                              of                              LOS ANGELES                 :
[Type of Recording Jurisdiction]                              [Name of Recording Jurisdiction]
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 7585007010                              which currently has the address of
            6115 ARMAGA SPRING ROAD, RANCHO PALOS VERDES                              ,
                                            [Street/City]
California      90275      ("Property Address"):
            [Zip Code]

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

12/19/2017

@VMP -8A(CA) (0207)      CHL (09/02)      Page 3 of 16      Initials:       Form 3005 1/01

05  1504263

DOC ID #: 00010278469906005

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

-6A(CA) (0207)　　CHL (09/02)　　　　Page 4 of 16　　　　Initials: 　　Form 3005 1/01

05 1504263

DOC ID #: 00010278469906005

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

 -6A(CA) (0207)    CHL (09/02)   Page 5 of 16   Initials    Form 3005 1/01

05 1504263

DOC ID #: 00010278469906005

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

Initials: ___

-6A(CA) (0207)        CHL (09/02)        Page 6 of 16        Form 3005 1/01

05 1504263

12/19/2017

DOC ID #: 00010278469906005

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

12-19-2017

05 1504263

DOC ID #: 00010278469906005

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower



shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

VMP®  -6A(CA) (0207)        CHL (09/02)              Page 9 of 16                                    Form 3005  1/01

Initials

05  1504268

DOC ID #: 00010278469906005

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Initials

Form 3005  1/01

DOC ID #: 00010278469906005

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

6A(CA) (0207)          CHL (09/02)          Page 11 of 16                    Initials: _____    Form 3005 1/01

05  1504263

*13*

DOC ID #: 00010278469906005

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

05  1504263

DOC ID #: 00010278469906005

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

Initials: [signature]

VMP® -6A(CA) (0207)     CHL (09/02)     Page 13 of 16     Form 3005 1/01

DOC ID #: 00010278469906005

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials: 

Form 3005   1/01

05  1504263

DOC ID #: 00010278469906005

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____

_____ (Seal)
THOMAS S. LIN                                -Borrower

_____ (Seal)
LILY W. LIN                                  -Borrower

_____ (Seal)
                                             -Borrower

_____ (Seal)
                                             -Borrower

-6A(CA) (0207)      CHL (09/02)          Page 15 of 16          Form 3005 1/01

05  1504263

DOC ID #: 00010278469906005

State of California
County of  Los Angeles                        } ss.

On  June 17, 2005  before me,  Arnie Goldstein
     Notary Public                                personally appeared

Thomas S. Lin
Lily W. Lin

, ~~personally known to me~~
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Arnie Goldstein_ (Seal)

OFFICIAL SEAL
ARNIE GOLDSTEIN
NOTARY PUBLIC - CALIFORNIA
COMMISSION # 1340478
LOS ANGELES COUNTY
My Commission Exp. January 27, 2008

Initials

-6A(CA) (0207)        CHL (09/02)        Page 16 of 16        Form 3005 1/01

05 1504263

. Prepared by: TONY DEL A        L

**AMERICA'S WHOLESALE LENDER**

Branch #: 0000919
2301 ROSECRANS AVE #1150
EL SEGUNDO, CA 90245
Phone: (310)727-1735
Br Fax No.: (310)536-9945

DATE:        06/15/2005
CASE #:
DOC ID #:    00010278469906005
BORROWER: THOMAS S. LIN
PROPERTY ADDRESS: 6115 ARMAGA SPRING ROAD
                  RANCHO PALOS VERDES, CA 90275

## LEGAL DESCRIPTION EXHIBIT A

Lot 52, of Tract No. 27681, in the City of Rancho Palos Verdes, County of Los Angeles,
State of California, as per map recorded in Book 700 Page(s) 1 to 4 of maps, in the office
of the County Recorder of said county.

**FHA/VA/CONV**
• Legal Description Exhibit A
1C404-XX (04/03)(d)



*23991*



*10278469900000100 6A*

05 1504263

# ADJUSTABLE RATE RIDER
### (PayOption MTA Twelve Month Average Index - Payment Caps)

12125662    00010278469906005
[Escrow/Closing #]  [Doc ID #]

THIS ADJUSTABLE RATE RIDER is made this FIFTEENTH day of
JUNE, 2005   , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
AMERICA'S WHOLESALE LENDER

("Lender") of the same date and covering the property described in the Security Instrument and
located at:

6115 ARMAGA SPRING ROAD
RANCHO PALOS VERDES, CA 90275
[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE
MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY
PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD
BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE
MAXIMUM LIMIT STATED IN THE NOTE.**

  **ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agrees as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
  The Note provides for changes in the interest rate and the monthly payments, as follows:

• **PayOption MTA ARM Rider**
**1E310-XX (12/04)(d)**    Page 1 of 6





05 1504263

DOC ID #: 0001027846990

## 2. INTEREST

### (A) Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          1.000 %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of the Note.

### (B) Interest Rate Change Dates

The interest rate I will pay may change on the first          day of AUGUST, 2005          , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

### (C) Index

Beginning with the first Interst Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (D) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding          THREE & 45/100 percentage point(s) (    3.450 %) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than          9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month.

I will make my monthly payments on the FIRST          day of each month beginning on August, 2005          . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under the Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JULY 01, 2035          , I still owe amounts under the Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

• PayOption MTA ARM Rider
1E310-XX (12/04)                    Page 2 of 6

DOC ID #: 00010278469906005

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**
Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $ 2,814.35                                    , unless adjusted under Section 3 (F).

**(C) Payment Change Dates**
My monthly payment may change as required by Section 3(D) below beginning on the first                 day of AUGUST, 2006                  , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**
At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

• **PayOption MTA ARM Rider**
**1E310-XX (12/04)**                    Page 3 of 6

05 1504263

DOC ID #: 00010278469906005

**(E) Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN percent ( 115 %) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G) Required Full Payment**

On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H) Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options;

      (i) **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

      (ii) **Fully Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments.

      (iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

● **PayOption MTA ARM Rider**
**1E310-XX (12/04)**                    Page 4 of 6

DOC ID #: 00010278469906005

These Payment Options are only applicable if they are greater than the Minimum Payment.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

**Transfer of the Property or a Beneficial Interest In Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by

**PayOption MTA ARM Rider**
**1E310-XX (12/04)**                    Page 5 of 6

05 1504263

DOC ID #: 00010278469906005

this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____  -Borrower
THOMAS S. LIN

_____  -Borrower
LILY W. LIN

_____  -Borrower

_____  -Borrower

● **PayOption MTA ARM Rider**
**1E310-XX (12/04)**                    **Page 6 of 6**

08 1504263

**EXHIBIT B**

# Shellpoint
## Mortgage Servicing

Phone Number 1 866-316-4706
Fax: 866-467-1137
www.shellpointmtg.com

Mon - Fri:8:00AM-10:00PM
Sat:8:00AM-3:00PM

December 9, 2016

**Re: Property Address: 6115 Armaga Spring R Rancho Palos Verdes, CA 90275**

Dear Thomas S Lin and Lily Lin:

Shellpoint Mortgage Servicing would like to welcome you and inform you that effective 12/01/2016, the servicing of your loan has been transferred from Select Portfolio Servicing, Inc. to Shellpoint Mortgage Servicing.  At Shellpoint, we believe trust, integrity and sound practices are the cornerstones of relationships, and are committed to providing you with quality service and an exceptional experience unlike any other.

Shellpoint Mortgage Servicing, understands mortgages can seem complex, and it is our responsibility to provide you with as many tools and options to make it as simple and easy for you as possible.   Our Customer Care Team has an immense amount of knowledge and are here to address all your concerns.  If you have any questions regarding your mortgage loan, your payment or have any other concerns, please call us at 866-316-4706. Our live agents are available between the hours of 8:00AM-10:00PM Monday through Friday, and 8:00AM-3:00PM on Saturdays (EST).  It is our pleasure to speak with you any time you need us.

You may also visit our website at  www.shellpointmtg.com where you will find additional information regarding mortgages. Once you create an account, you will have online access to make payments, view statements and even chat with a live agent to address any question you may have.

Despite mortgages seeming complicated, we believe servicing our customers shouldn't be.  With that in mind, please feel free to use the payment coupon below to send us your first payment.  We offer several easy payment options, including:

- Free ACH
- Online Account Payment
- Phone (either with our IVR system or live agent)

Shellpoint Mortgage Servicing welcomes you and is excited to have you as our valued customer.

Sincerely,
Shellpoint Mortgage Servicing

✂  Detach Temporary Payment Coupon And Return With Payment  ✂

## PAYMENT COUPON

P.O. BOX 1410
TROY, MI 48099-1410
RETURN SERVICE REQUESTED



| | |
|---|---|
| Loan Number | 0578162242 |
| First Payment Due Date: | 11/01/2010 |
| Monthly Payment Amount | $ 5,122.27 |
| **Amount Enclosed:** | **$** |

S-SFRECS20  L-10-M  R-117
P6E1DM00301335 - 504894023 I10674

THOMAS S LIN
LILY LIN
6115 ARMAGA SPRING RD
RANCHO PALOS VERDES CA 90275-4802

**Please mail your payment and this coupon to:**

SHELLPOINT MORTGAGE SERVICING
P.O. BOX 740039
CINCINNATI, OH 45274-0039

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.**

**Shellpoint Welcome Package,** )e                                          **Shellpoint Loan ID: 0578162242**




# *Helping You Manage Your Mortgage*

To ensure a smooth transfer, please review the following important information regarding your loan payments. Our records indicate that your 11/01/2010 payment is due. You will receive a Billing Statement from Shellpoint Mortgage Servicing each month, and effective 12/01/2016, please begin sending your mortgage payments to us using one of the options below. As of the date of this letter, the principal balance is $977,375.94 and your escrow balance is $-32,989.14.

## Easy Ways to Pay

**FREE Automatic Draft (ACH):** Sign up online at www.shellpointmtg.com. Our ACH options are:
Monthly – Choose your date (1st - 15th)
Bi-weekly – Draft half every other Monday

**Online:** You can make one-time payments when you sign up online at www.shellpointmtg.com

**Mail:**

Shellpoint Mortgage Servicing
P.O. Box 740039
Cincinnati, OH 45274-0039

**Phone:** Payments can be made over the phone through our automated system or with a live representative at 866-316-4706

## Loan Information

To help simplify the management of your mortgage, we have provided the following breakdown to use as an easy reference.

| Terms of Your Mortgage | |
| --- | --- |
| Loan Number | 0578162242 |
| Loan Origination Date | 06/15/2005 |
| Original Loan Amount | $875,000.00 |
| Current Interest Rate | 3.75% |
| Term | 360 months |
| Maturity Date | 07/01/2035 |

| Current Balances | |
| --- | --- |
| Principal Balance | $977,375.94 |
| Escrow Balance | $-32,989.14 |

| Payment Details | |
| --- | --- |
| Due Date | 11/01/2010 |
| Principal and Interest | $5122.26 |
| Escrow | $0.01 |
| Total Monthly Payment | $5122.27 |

# *Reach Out to Us*



### Call

866-316-4706



### Live Chat

www.shellpointmtg.com/chat-disclaimer



### Secure Email

www.shellpointmtg.com/contact-us

041600204PC

Shellpoint Welcome Package,    e                                    Shellpoint Loan ID: 0578162242

# *FAQs*



| | |
|---|---|
| Will my previous servicer still accept my payments? | The date that your previous servicer will stop accepting payments from you is 11/30/2016. We will begin accepting payments from you on 12/01/2016. Please send all payments due on or after that date. |
| What if I make a payment to my previous servicer? | Your previous servicer will forward your payment to us and it will be applied towards the date due. |
| I previously had ACH, will it transfer over? | No. You will need to set up a new ACH by creating an account on www.shellpointmtg.com or calling our Customer Care Team. |
| How can I make payments to you? | Payments can be made by check, online, with a live Customer Care Agent, through our automated IVR, wire transfer, or by setting up a monthly or bi-weekly ACH. |
| What if my payment is due during this transfer? | Please make your payments to Shellpoint Mortgage Servicing using one of the options above. It is important to continue making your monthly payments, however, during the first 60 days of transfer you will neither be reported to the credit bureaus nor incur any late fees. |
| What if I have more than one loan? | This letter refers only to loan number 0578162242. If more than one loan is transferring to Shellpoint Mortgage Servicing we will send you a Welcome Letter and information for each loan. When making payments, please send the correct loan amounts separately, referencing each account. |

Except in limited circumstances, the law requires your present servicer to send notice at least 15 days before the effective date of transfer or at closing. Your new servicer must also send you this notice no later than 15 days after the effective date or transfer date or at closing. The assignment, sale or transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage, other than the terms directly related to the servicing of your loan (e.g. payments and inquiries).

If you pay by check, you are authorizing Shellpoint Mortgage Servicing to use the check information to make a one-time electronic debit for each check presented, from the account at the financial institution designated on the check. This electronic debit will be for the exact amount indicated on the check.

By January 31 of each year, Shellpoint Mortgage Servicing provides an Annual Tax and Interest Statement for IRS reporting on the portion of the previous year that Shellpoint Mortgage Servicing serviced your loan. If your loan is currently escrowed for taxes and/or insurance, Shellpoint Mortgage Servicing is required by law to analyze your loan Shellpoint Mortgage Servicing will notify you in writing if your payment amount changes.

Premiums for mortgage life, accidental death or disability insurance will not be transferred from your previous servicer. You may contact your carrier for arrangements to maintain your coverage through direct billing. Please contact your previous servicer if you are unsure of your carrier's name.

You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 USC 2605)

Section 6 of RESPA (12 USC 2605) gives you certain consumer rights. If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment . within five (5) business days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer; which includes your name, account number and reasons for the request. If you want to send a "qualified written request" regarding the servicing of your loan, it must be sent to Shellpoint Mortgage Servicing, P.O. Box 10826, Greenville, SC 29603-0826 or you can call 866-316-4706.

P. 7

No later than thirty (30) business days after receiving your request, your servicer must make any appropriate corrections to your account and must provide you with a written clarification regarding any dispute. During this 30-day period, your servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified written request. However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A business day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where servicers are shown to have violated the requirements of that Section. You should seek legal advice if you believe your rights have been violated. If you have any questions about your previous servicer, Select Portfolio Servicing, Inc., about your mortgage loan or this transfer, please contact them using the following information:

Select Portfolio Servicing, Inc.,<br>
P.O. Box 551170<br>
Jacksonville, FL 32255<br>
800-258-8602

**Please read the following important notices as they may affect your rights.**

This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

<u>California</u>
As required by law, you are hereby notified that a negative credit bureau report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill your credit obligation.

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

**Attention Servicemembers and Dependents:** The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service. Counseling for covered servicemembers is available from Military OneSource (800-342-9647) and the United States Armed Forces Legal Assistance or other similar agencies. For more information, please visit the Military OneSource website www.militaryonesource.mil/.

The following is a Spanish translation of the information previously provided:

**Lea por favor las siguientes avisos importantes que puedan afectar sus derechos.**

Esto es un intento de cobrar una deuda y cualquier información obtenida se utilizará para ello. Esta comunicación es de un cobrador de deudas.

Si usted es un cliente en situación de bancarrota o un cliente que ha recibido una descarga de bancarrota de la deuda: tenga en cuenta que este aviso es para informarle de la situación de su préstamo hipotecario. Este aviso no constituye una exigencia de pago ni un aviso de responsabilidad civil contra ninguno de los destinatarios de la presente notificación, que pudiese haber recibido un descargo de este tipo de deuda de conformidad con la legislación vigente sobre bancarrota o que pudiera ser objeto de suspensión automática en virtud de Sección 362 del Código de Bancarrota de los Estados Unidos. No obstante, puede ser una notificación de una posible aplicación de gravamen sobre la propiedad como garantía, que aún no ha sido descargada en su proceso de bancarrota.

<u>California</u>
Como es requerido por la ley usted esta siendo notificado por este medio que un reporte de crédito negativo afectando su reporte de crédito puede ser remitido a una agencia de reporte de créditos, si usted no puede satisfacer los términos de su obligación.

El acto estatal de Rosenthal Fair Debt Collection Practices, y el acto federal de Fair Debt Collection Practices requieren que, a menos de circunstancias inusuales, los cobradores no podrán contactarlo antes de las 8 a.m. o después de las 9 p.m. Ellos no lo podrán acosar usando amenazas violentas o arrestarlo o usar un lenguaje ofensivo. Los cobradores no podrán usar declaraciones falsas o

engañosas o llamarlo a su trabajo si ellos saben o tienen razón para saber que usted no puede recibir llamadas personales en su trabajo. En general, cobradores no le podrán decir a otra persona, aparte de su abogado o su esposa, acerca de su deuda. Los cobradores se podrán comunicar con otras personas para poder comunicarse con usted, y para entablar un juicio. Para más información sobre las actividades de colección de deuda, usted puede contactar Federal Trade Commission al 1-877-FTC-HELP o www.ftc.gov

**Atención Miembros del Servicio Militar y Dependientes:** Ley de Amparo Civil para miembros del servicio militar y ciertas leyes estatales proporcionan protecciones importantes para usted, incluyendo protecciones de tasas de interés y prohibiendo la ejecución hipotecaria bajo la mayoría de las circunstancias durante y doce meses después del miembro del servicio militar u otro servicio. Asesoramiento para militares con cobertura está disponible de Military OneSource (800-342-9647) y la Asistencia Legal de las Fuerzas Armadas de Estados Unidos o de otras agencias similares. Para más información por favor visite el sitio web de Military OneSource www.militaryonesource.mil/.

| FACTS | WHAT DOES Shellpoint Mortgage Servicing DO WITH YOUR PERSONAL INFORMATION? |
|---|---|

| WHY? | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
|---|---|

| WHAT? | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>• Social Security number and income<br>• credit history and credit scores<br>• account balances and payment history |
|---|---|

| HOW? | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Shellpoint Mortgage Servicing chooses to share; and whether you can limit this sharing. |
|---|---|

| Reasons we can share your personal information | Does Shellpoint Mortgage Servicing share? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes - such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| For our marketing purposes - to offer our products and services to you | Yes | No |
| For joint marketing with other financial companies | No | We do not share |
| For our affiliates' everyday business purposes - information about your transactions and experiences | Yes | No |
| For our affiliates' everyday business purposes - information about your creditworthiness | Yes | Yes |
| For our affiliates to market to you | Yes | Yes |
| For nonaffiliates to market to you | No | We do not share |

| To limit our sharing | • Call us toll-free at 866-316-4706 or<br>• Contact us online: www.shellpointmtg.com or<br>• Mail the form below<br>**Please note:**<br>If you are a new customer, we can begin sharing your information 30 days from the date we sent this notice. When you are no longer our customer, we continue to share your information as described in this notice. However, you can contact us at any time to limit our sharing. |
|---|---|

| Questions? | Call toll-free 866-316-4706 or go to www.shellpointmtg.com |
|---|---|

---

| Mail-in Form | |
|---|---|

Mark any/all you want to limit:

☐ Do not use my personal information to market to me.

☐ Do not share my personal information with other financial institutions to jointly market to me.

☐ Do not share information about my transactions or experiences with your affiliates for their everyday business purposes.

☐ Do not share information about my creditworthiness with your affiliates for their everyday business purposes.

☐ Do not allow your affiliates to use my personal information to market to me.

☐ Do not share my personal information with nonaffiliates to market their products and services to me.

| Name | Thomas S Lin Lily Lin | Mail to: |
|---|---|---|
| Address | 6115 Armaga Spring Rd. | Shellpoint Mortgage Servicing<br>P.O. Box 10826 |
| City, State, Zip | Rancho Palos Verdes CA 90275 | Greenville, SC 29603-0826 |
| Account # | 0578162242 | |

**EXHIBIT C**

P.O. BOX 1410
TROY, MI 48099-1410
RETURN SERVICE REQUESTED

C 19 2016

**Sl lpoint**

Mortgage Servicing

Mon - Thurs: 8:00AM-10:00PM
Fri: 8:00AM-10:00PM
Sat: 8:00AM-3:00PM

Total 10 pages

Phone Number: 866-316-4706
Fax: 866-467-1137
www.shellpointmtg.com

S-SFRECS20 L-0039 R-117
P6EAO800202067 - 505030401 104134
THOMAS S LIN
LILY LIN
6115 ARMAGA SPRING RD
RANCHO PALOS VERDES CA 90275-4802

| Loan Number: | 0578162242 |
|---|---|
| Principal Balance: | $977,375.94 |
| Deferred Balance: | $0.00 |
| Property: | 6115  Armaga Spring R Rancho Palos Verdes, CA 90275 |

12/12/2016

### 'VALIDATION OF DEBT NOTICE

Dear Mortgagors,

Pursuant to the Federal Fair Debt Collection Practices Act, you are notified that:

1.  As of 12/12/2016, our records reflect that the amount of the debt that is now due is $379,047.98. This amount reflects the payment required to bring your loan payments current.

2.  The name of the creditor to whom the debt is owed is Bank of America, N.A..

3.  Unless you, within thirty (30) days of receipt of this notice, dispute the validity of the debt, or any portion thereof, Shellpoint will assume the debt to be valid.

4.  If you notify Shellpoint in writing within thirty (30) days after receipt of this notice that the debt, or any portion thereof, is disputed, we will obtain verification of the debt and mail a copy of the verification to you.

5.  Upon your written request within thirty (30) days after receipt of this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Please be advised that the purpose of this notice is to collect a debt owed by you to Bank of America, N.A.. As such, any information that you provide in response to this notice or in response to any other communication with Shellpoint Mortgage Servicing will be used for that purpose.

For your benefit and assistance, there are government-approved home ownership counseling agencies designed to help homeowners avoid losing their homes.  To obtain a list of approved counseling agencies, please call (800) 569-4287.

Send written correspondence to:

Shellpoint Mortgage Servicing
P.O. Box 10826
Greenville, SC 29603-0826

Send payments to:

Shellpoint Mortgage Servicing
P.O. Box 740039
Cincinnati, OH 45274-0039

Sincerely,

Shellpoint Mortgage Servicing

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.**

P I000001 A-0578162242 044720101 I0400

Plea:   ead the following important notices as they     y affect your rights.

This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

<u>California</u>
As required by law, you are hereby notified that a negative credit bureau report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill your credit obligation.

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

**Attention Servicemembers and Dependents:** The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service. Counseling for covered servicemembers is available from Military OneSource (800-342-9647) and the United States Armed Forces Legal Assistance or other similar agencies. For more information, please visit the Military OneSource website www.militaryonesource.mil/.

The following is a Spanish translation of the information previously provided:

**Lea por favor las siguientes avisos importantes que puedan afectar sus derechos.**

Esto es un intento de cobrar una deuda y cualquier información obtenida se utilizará para ello. Esta comunicación es de un cobrador de deudas.

Si usted es un cliente en situación de bancarrota o un cliente que ha recibido una descarga de bancarrota de la deuda: tenga en cuenta que este aviso es para informarle de la situación de su préstamo hipotecario. Este aviso no constituye una exigencia de pago ni un aviso de responsabilidad civil contra ninguno de los destinatarios de la presente notificación, que pudiese haber recibido un descargo de este tipo de deuda de conformidad con la legislación vigente sobre bancarrota o que pudiera ser objeto de suspensión automática en virtud de Sección 362 del Código de Bancarrota de los Estados Unidos. No obstante, puede ser una notificación de una posible aplicación de gravamen sobre la propiedad como garantía, que aún no ha sido descargada en su proceso de bancarrota.

<u>California</u>
Como es requerido por la ley usted esta siendo notificado por este medio que un reporte de crédito negativo afectando su reporte de crédito puede ser remitido a una agencia de reporte de créditos, si usted no puede satisfacer los términos de su obligación.

El acto estatal de Rosenthal Fair Debt Collection Practices, y el acto federal de Fair Debt Collection Practices requieren que, a menos de circunstancias inusuales, los cobradores no podrán contactarlo antes de las 8 a.m. o después de las 9 p.m. Ellos no lo podrán acosar usando amenazas violentas o arrestarlo o usar un lenguaje ofensivo. Los cobradores no podrán usar declaraciones falsas o engañosas o llamarlo a su trabajo si ellos saben o tienen razón para saber que usted no puede recibir llamadas personales en su trabajo. En general, cobradores no le podrán decir a otra persona, aparte de su abogado o su esposa, acerca de su deuda. Los cobradores se podrán comunicar con otras personas para poder comunicarse con usted, y para entablar un juicio. Para más información sobre las actividades de colección de deuda, usted puede contactar Federal Trade Commission al 1-877-FTC-HELP o www.ftc.gov

**Atención Miembros del Servicio Militar y Dependientes:** Ley de Amparo Civil para miembros del servicio militar y ciertas leyes estatales proporcionan protecciones importantes para usted, incluyendo protecciones de tasas de interés y prohibiendo la ejecución hipotecaria bajo la mayoría de las circunstancias durante y doce meses después del servicio militar u otro servicio. Asesoramiento para militares con cobertura está disponible de Military OneSource (800-342-9647) y la Asistencia Legal de las Fuerzas Armadas de Estados Unidos o de otras agencias similares. Para más información por favor visite el sitio web de Military OneSource www.militaryonesource.mil/.

P.O. BOX 1410
TROY, MI 48099-1410
RETURN SERVICE REQUESTED



MAR 31 2017


Shellpoint
Mortgage Servicing

Mon - Thurs: 8:00AM-10:00PM
Fri: 8:00AM-10:00PM
Sat: 8:00AM-3:00PM

**Phone Number:** 866-316-4706
**Fax:** 866-467-1137
www.shellpointmtg.com

Page 1

ɪ|ıɪ|ɪl|ɪlııɪ·ɪ|lll|ɪlɪɪ·ɪll|ɪ·ɪɪlıɪlɪll|··ɪ·ɪɪ|ɪlll|ɪl
S-SFRECS20 L-150 R-117
P6SG7B00200159 - 513524539 I00318
THOMAS S LIN
LILY LIN
6115 ARMAGA SPRING RD
RANCHO PALOS VERDES CA 90275-4802

03/28/2017

RE:     **Loan Number: 0578162242**
        **Borrowers: Thomas S Lin and Lily Lin**

Dear Thomas S Lin and Lily Lin:

This letter is in response to your recent inquiry regarding the above-referenced account serviced by Shellpoint Mortgage Servicing on behalf of THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-38, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-38, the owner of your loan. Their contact information is:

        Address: 101 Barclay St., 8W   New York NY 10286

We are working to gather the requested information and will forward it to you as soon as possible.

If you have any additional questions or concerns, please contact our Customer Service department at 866-316-4706.

Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan español al número 866-316-4706.

**Customer Service**
**Shellpoint Mortgage Servicing**

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.**

P6SG7B00200159 I000318 A-0578162242 000530101L040

**Please read          ollowing important notices as they may af      our rights.**

This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt; please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

<u>California</u>
As required by law, you are hereby notified that a negative credit bureau report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill your credit obligation.

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

**Attention Servicemembers and Dependents:** The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service. Counseling for covered servicemembers is available from Military OneSource (800-342-9647) and the United States Armed Forces Legal Assistance or other similar agencies. For more information, please visit the Military OneSource website www.militaryonesource.mil/.

The following is a Spanish translation of the information previously provided:

**Lea por favor las siguientes avisos importantes que puedan afectar sus derechos.**

Esto es un intento de cobrar una deuda y cualquier información obtenida se utilizará para ello. Esta comunicación es de un cobrador de deudas.

Si usted es un cliente en situación de bancarrota o un cliente que ha recibido una descarga de bancarrota de la deuda; tenga en cuenta que este aviso es para informarle de la situación de su préstamo hipotecario. Este aviso no constituye una exigencia de pago ni un aviso de responsabilidad civil contra ninguno de los destinatarios de la presente notificación, que pudiese haber recibido un descargo de este tipo de deuda de conformidad con la legislación vigente sobre bancarrota o que pudiera ser objeto de suspensión automática en virtud de Sección 362 del Código de Bancarrota de los Estados Unidos. No obstante, puede ser una notificación de una posible aplicación de gravamen sobre la propiedad como garantía, que aún no ha sido descargada en su proceso de bancarrota.

<u>California</u>
Como es requerido por la ley usted esta siendo notificado por este medio que un reporte de crédito negativo afectando su reporte de crédito puede ser remitido a una agencia de reporte de créditos, si usted no puede satisfacer los términos de su obligación.

El acto estatal de Rosenthal Fair Debt Collection Practices, y el acto federal de Fair Debt Collection Practices requieren que, a menos de circunstancias inusuales, los cobradores no podrán contactarlo antes de las 8 a.m. o después de las 9 p.m. Ellos no lo podrán acosar usando amenazas violentas o arrestarlo o usar un lenguaje ofensivo. Los cobradores no podrán usar declaraciones falsas o engañosas o llamarlo a su trabajo si ellos saben o tienen razón para saber que usted no puede recibir llamadas personales en su trabajo. En general, cobradores no le podrán decir a otra persona, aparte de su abogado o su esposa, acerca de su deuda. Los cobradores se podrán comunicar con otras personas para poder comunicarse con usted, y para entablar un juicio. Para más información sobre las actividades de colección de deuda, usted puede contactar Federal Trade Commission al 1-877-FTC-HELP o www.ftc.gov

**Atención Miembros del Servicio Militar y Dependientes:** Ley de Amparo Civil para miembros del servicio militar y ciertas leyes estatales proporcionan protecciones importantes para usted, incluyendo protecciones de tasas de interés y prohibiendo la ejecución hipotecaria bajo la mayoría de las circunstancias durante y doce meses después del miembro del servicio militar u otro servicio. Asesoramiento para militares con cobertura está disponible de Military OneSource (800-342-9647) y la Asistencia Legal de las Fuerzas Armadas de Estados Unidos o de otras agencias similares. Para más información por favor visite el sitio web de Military OneSource www.militaryonesource.mil/.

EXHIBIT E

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

**This page is part of your document - DO NOT DISCARD**



## 20141381154

**Pages:**
**0003**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**12/18/14 AT 03:44PM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



**L E A D S H E E T**



201412182900169

00009950998



006545122

**SEQ:**
**01**

**DAR - Mail (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

Recording Requested By:
**Bank of America**
Prepared By:  Diana De Avila
1800 Tapo Canyon Road
Simi Valley, CA 93063
800-444-4302
When recorded mail to:
CoreLogic
Mail Stop: ASGN
1 CoreLogic Drive
Westlake, TX 76262-9823

DocID#   11210278469919713
Property Address:
6115 Armuga Spring Road
Rancho Palos Verdes, CA 90275
CA0M-ADT 31309396   11/20/2014  A201

12/18/2014

*20141381154*

This space for Recorder's use

MIN #: 1000157-0005306288-7            MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.** (herein "Assignor"), whose address is P.O. Box 2026, Flint, MI 48501-2026, **AS NOMINEE FOR AMERICA'S WHOLESALE LENDER, ITS SUCCESSORS AND ASSIGNS** hereby assign and transfer to **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2005-38, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-38** (herein "Assignee"), whose address is C/O BAC, M/C: CA6-914-01-43, 1800 Tapo Canyon Road, Simi Valley, CA 93063, and its successors and assigns all its right, title, and interest in and to a certain Deed Of Trust described below.

Beneficiary:              **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICA'S WHOLESALE LENDER, ITS SUCCESSORS AND ASSIGNS**
Original Borrower(s):     **THOMAS S LIN AND LILY W LIN, HUSBAND AND WIFE AS JOINT TENANTS**
Original Trustee:         **CTC REAL ESTATE SERVICES**
Date of Deed of Trust:    **6/15/2005**
Original Loan Amount:     **$875,000.00**

Recorded in Los Angeles County, CA on: 6/27/2005, book N/A, page N/A and instrument number 05 1504263

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS NOMINEE FOR AMERICA'S
WHOLESALE LENDER, ITS SUCCESSORS AND
ASSIGNS

By: _____
        Cecilia Rodriguez
        Assistant Secretary

Date _____   NOV 2 1 2014

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

12/19/2017

RECORDER MEMO: This COPY is NOT an OFFICIAL RECORD.

State of California
County of Ventura

On **NOV 2 1 2014** before me, _____ *Danya Bucaro* _____, Notary Public, personally appeared
_____ Cecilia Rodriguez _____, who proved to me on the basis of satisfactory evidence to be the person
(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

DANYA BUCARO
Commission # 2058111
Notary Public - California
Ventura County
My Comm. Expires Mar 15, 2018

Notary Public: _____ *Danya Bucaro* _____   (Seal)
My Commission Expires: _*March 15, 2018*_

DocID#   11210278469919713